## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **JANE ROE,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. _____** |
| **LINCOLN-SUDBURY REGIONAL SCHOOL DISTRICT, BELLA WONG, AIDA RAMOS and LESLIE PATTERSON,** | |
| **Defendants.** | |

## COMPLAINT

## INTRODUCTION

This is an action to recover damages Plaintiff Jane Roe ("Jane" or "Plaintiff") sustained

as a result of the wrongful actions of Defendants Lincoln-Sudbury Regional School District (the

"District"), District Superintendent and Lincoln-Sudbury High School Principal Bella Wong

("Wong"), Lincoln-Sudbury High School Director of Student Services Aida Ramos ("Ramos"),

and Lincoln-Sudbury High School Housemaster Leslie Patterson ("Patterson") (collectively,

"Defendants").  Defendants engaged in and/or authorized discriminatory practices and

intentional and negligent infliction of emotional distress with respect to Plaintiff after learning

she had been sexually abused by two male classmates.

On November 1, 2013, Jane was sexually assaulted by two male Lincoln-Sudbury

Regional High School ("Lincoln-Sudbury") students (the "Perpetrators")[1] during a football game

at Lincoln-Sudbury (the "Incident").  In addition to failing and refusing to address the Incident or

---

[1] The Perpetrators were minors at the time of the Incident, and while Plaintiff believes they have now reached the age of 18, in an abundance of caution, Plaintiff has not referred to them herein by name.

to discipline the Perpetrators, the Defendants constructively disciplined and stigmatized Jane by forcing her to sit apart from her classmates and spend her days sitting in a common area.  While the Defendants claim this action protected Jane by keeping the Perpetrators away from her, all students had unfettered access to the common area, including the Perpetrators, and Patterson often required students who received in-school detention or other punishment to sit in that same common area.  As a result, Jane regularly saw one of the Perpetrators, and suffered constant feelings of shame and ridicule as a result of her forced segregation.  The Defendants also failed and refused to properly investigate Jane's report of the Incident, and failed and refused to properly provide for Jane's educational needs following the Incident.  Defendants also failed to provide Jane and her parents a timely "Notice of Findings" as required by Title IX; Jane and her parents did not receive a Notice of Findings until October 2015, almost two years after the Incident, which Notice of Findings was then "corrected" almost two years later in August of 2017-after the Perpetrators had either graduated or left the school.

The District also refused to provide a proper public school educational placement for Jane, despite the existence and availability of an appropriate program at Lincoln-Sudbury. Instead, the District insisted that Jane attend a lower-quality therapeutic school in another town while the Perpetrators were allowed to remain at Lincoln-Sudbury.   As a result, Jane was forced to attend private school at Lawrence Academy at great personal cost and expense, in order to obtain an education equivalent to that available to her at Lincoln-Sudbury.  Since the Incident, Plaintiff has suffered from significantly detrimental social, emotional, and health effects. These effects include but are not limited to severe depression and self-harm that resulted in Plaintiff's admission into Anna Jacques Hospital for seven days, suicidal ideation and loss of friends.

Through this action, Plaintiff seeks to recover for the substantial damage Defendants' conduct caused her.

## PARTIES

1.      Plaintiff Jane Roe is an individual residing in Massachusetts.  At the time of the Incident, Plaintiff was a minor and a student at Lincoln-Sudbury High School.  Plaintiff turned 18 on August 26, 2016.

2.      Defendant Lincoln-Sudbury Regional School District ("District") is the corporate name of the governing body of the Lincoln-Sudbury Regional High School and maintains a principal address of 390 Lincoln Road, Sudbury, MA.

3.      Defendant Bella Wong ("Wong") is an individual who in her official and individual capacities, worked for the District and Lincoln-Sudbury, which maintains a business address of 390 Lincoln Rd., Sudbury, MA.  At all relevant times, Wong was the Superintendent of Schools in the District as well as the Principal of Lincoln-Sudbury High School.

4.      Defendant Aida Ramos ("Ramos") is an individual who in her official and individual capacities, worked for the District and Lincoln-Sudbury, which maintains a business address of 390 Lincoln Rd., Sudbury, Massachusetts.  At all relevant times, Ramos was the Director of Student Services at Lincoln-Sudbury High School.

5.      Defendant Leslie Patterson ("Patterson") is an individual who in her official and individual capacities worked for the District and Lincoln-Sudbury, which maintains a business address of 390 Lincoln Rd., Sudbury, Massachusetts.  At all relevant times, Patterson was the Housemaster of the East House at Lincoln-Sudbury, the House to which Plaintiff was assigned at all relevant times.

## JURISDICTION AND VENUE

6.      Lincoln-Sudbury Regional School District received federal financial assistance and is therefore subject to the dictates and provisions of 20 U.S.C. § 1681 ("Title IX").

7.      Wong, Ramos and Patterson are employees of Lincoln-Sudbury Regional School District and were acting within the scope of their employment when they engaged in the actions alleged in this Complaint.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, §1343 and over state law claims brought hereunder pursuant to 28 U.S.C. § 1367.

9.      Venue in the District of Massachusetts is proper under 28 U.S.C. § 1391(b) because all defendants reside in this District, and the events, acts, and/or omissions giving rise to this action took place and caused injury in Massachusetts.

## FACTS

10.      At the time of the Incident, Jane was a 15 year-old sophomore attending Lincoln-Sudbury.  Jane had lived in Sudbury since 2003 and attended Sudbury schools from 2004 until December 2013.

11.      Prior to the Incident, Jane always received high marks at school and was regarded by her teachers as an attentive and well-behaved student.  Jane had many friends at school and never experienced feelings of suicide, depression or self-harm.

### The Incident

12.      On November 1, 2013, Jane attended a football game at Lincoln-Sudbury.  During the game Jane was lured to an adjacent field by the Perpetrators who were also students at Lincoln-Sudbury.  The Perpetrators then sexually assaulted her.

13.     The assault occurred on the bleachers of the field adjacent to the football field and in an unlocked storage shed near the bleachers. Although Jane tried to resist, the Perpetrators forced Jane to perform oral sex and penetrated her with their fingers.

14.     Jane was deeply traumatized by the Incident and did not immediately inform her parents or any other adult that it had occurred. Although she continued to attend school from approximately November 4 through November 7, 2013, she struggled to motivate herself to attend school and complete her homework, which was unusual for her.

15.     In the weeks following the assault, the Perpetrators acknowledged the Incident in text messages to Jane.

16.     In these text message exchanges, both Perpetrators admit to having acted improperly and beg for Jane's forgiveness and silence.  When Jane asked Perpetrator 1 why he sexually assaulted her, he responded that he didn't know but that he shouldn't have done anything to her and that it was his fault.

17.     At one point in the text exchange, Perpetrator 2 told Jane "I lose control and I'm sorry." He then offered Jane money for her silence.  Additionally, when Jane referenced the Perpetrators' girlfriends, Perpetrator 2 begged Jane for her silence and stated that he would "go to Juvie if u being [sic] this to the police or school, Laura is all I have right now and I can't loose [sic] her . . . Jane plz."

18.     Later in the text exchange, Perpetrator 2 attempted to persuade Jane to keep silent by indicating that he was crying, Jane responds the she'd "been crying ever since I left u guys," and continued, "I resisted . . . I tried to run away . . . [Perpetrator 2] you both raped me."

19.     Although Perpetrator 2 initially attempted to deny the accusation, when Jane wrote, "You were making me stay," Perpetrator 2 *admitted*, "I did then stopped Jane plz [sic]."

When Jane responded that he did not stop, Perpetrator 2 began to text in all capitals begging Jane for her silence, saying that he could not endure "Juvie" and a break up, claiming that he was suicidal and once again offering Jane money for her silence.

20.     Additionally, Perpetrator 2 tried to place the blame on Perpetrator 1 but when Jane indicated she knows "[i]t was equally both of you," Perpetrator 2 did not deny that fact and instead continued to beg Jane not to speak to anyone about the Incident by stating that he would "do anything . . . I wil [sic] cut my penis off if you want," in order to maintain Jane's silence.

21.     The text exchange between Jane and Perpetrator 2 continued for several pages while Perpetrator 2 attempted to place blame on Perpetrator 1, bribe Jane for her silence and claim that he would not have engaged in sexual conduct if he hadn't thought she was "joking around" when she said she "wanted to leave and stuff."

22.     In a separate text exchange with Perpetrator 1, Jane confronted the boy for attempting to justify his actions to another classmate by stating that he was "drunk and high." When Jane asked Perpetrator 1 if he was planning to do anything to make the situation right, other than apologize, Perpetrator 1 responded only, "I know, I made very very shitty decisions."

23.     On November 7, 2013, Jane reported the Incident to Lincoln-Sudbury clinical counselor, Sue Leichtman ("Leichtman"). In turn, Leichtman notified Patterson and Jane's mother ("Mrs. Roe"), a Lincoln-Sudbury teacher, of Jane's report.

24.     Additionally, on November 7, 2013, via her Lincoln-Sudbury email address, Jane provided Patterson with screenshots of the text message exchange between her and the Perpetrators regarding the sexual assault.[2]

---

[2] On November 22, 2013, Mrs. Roe also forwarded screenshots of the text exchange to Patterson.

25.     After being notified of the assault, Mrs. Roe immediately took Jane to her pediatrician who referred her to the hospital, where a medical rape kit was completed and photographs of her bruises were taken by the Sudbury Police.

26.     On November 12, 2013, Jane's father ("Mr. Roe"), and Mrs. Roe appeared in Middlesex County Juvenile Court to seek Harassment Prevention Orders on behalf of Jane to protect her from both Perpetrators.  The Court issued the Harassment Prevention Orders as requested by the Roes, which were promptly provided to Lincoln-Sudbury.

### Patterson, Wong, Ramos and the District's Woefully Inadequate Response to the Incident

27.     On November 12, 2013 Jane returned to school for the first time since she disclosed the Incident to Patterson; however, she understandably felt that she was unable to attend classes because the Perpetrators were allowed to remain in school and shared classes in common with Jane.

28.     Patterson, Jane's housemaster, decided that because Jane was unable to attend classes, she should sit in the common area of Lincoln-Sudbury's East House.

29.     The East House main room houses student mailboxes and serves as an area where students, inclusive of the Perpetrators, congregate throughout the school day.  Additionally, it serves to house students serving in-school suspensions and after-school detentions.  The room is approximately 20 x 20 feet, with three circular tables and a desk at the back of the room where the House Assistant sits.  The Housemaster and two guidance counselors have offices adjoining the main room.

30.     A steady stream of students flows through East House throughout the day to check their mailboxes, to check in and out of school, or to attend meetings with their guidance

counselors or Housemaster.  Since the room was so small, approximately 400 students, including the one of the Perpetrators, had to pass Jane daily in order to pick up his mail.

31.     From approximately November 12 to November 22, 2013, Jane "attended" school by sitting in the East House main room, at a small table, at Patterson's direction.  Jane was not assigned work to complete and had little to no interaction with teachers, counselors or other Lincoln-Sudbury personnel.  She spent her days sitting alone, listening to her iPod.  Despite the proximity of her assigned table to two guidance counselors, Jane did not speak with any guidance counselor or other counselor during this time.

32.     On or about November 14, 2013 Jane's parents spoke with Wong regarding their concerns that the District was not actively ensuring Jane's safety from the Perpetrators and that the District was not supporting her academically, emotionally or socially.  Wong informed The Roes that only Patterson and the Housemaster responsible for the other Perpetrator had the authority to impose a remedy upon the Perpetrators.  In addition, she reported that they would be unable to provide Jane and her parents with information about any investigation or discipline, citing privacy concerns because the Perpetrators were allegedly special education students, as was Jane.

33.     Thereafter, over the course of November 14 to November 22, 2013, Jane attempted to attend classes, however, did so very infrequently for fear of seeing the Perpetrators.

34.      Despite the fact that Jane was displayed in the main room, purportedly to avoid the Perpetrators, and the fact that Lincoln-Sudbury was very well aware that the Perpetrators were subject to valid Harassment Prevention Orders, the District, Wong, Ramos and Patterson took little action to ensure that the Perpetrators did not come into contact with her.

35.     One of the Perpetrators would often enter the main room to check his respective mail box. This situation was traumatizing and embarrassing for Jane because it subjected her to interactions with the Perpetrator, which she was specifically trying to avoid, and caused further embarrassment by subjecting her to the student populace that constantly saw her sitting in the same area associated with school-based punishments.

36.     When at school, Jane found it difficult to maintain a normal daily routine while attempting to avoid the Perpetrators. This resulted in Jane's separation from her peers and a large portion of her day being spent sitting by herself, with no educational activities. For example, while Jane regularly ate in the cafeteria prior to the assault, after the Incident Jane stopped eating lunch in the cafeteria because she knew the Perpetrators would often eat there.

37.     As a result, Jane became increasingly withdrawn and fearful of coming into contact with the Perpetrators.  She began to stay home from school on an increasingly frequent basis to avoid the Perpetrators and the unwanted attention resulting from her sitting in the common area; however, having to miss school was also very upsetting for her.

38.     In an effort to ensure that the Perpetrators maintained a sufficient distance from Jane, on November 20, Jane and her parents attended court and had the Harassment Prevention Orders against the Perpetrators extended.  They immediately notified Lincoln-Sudbury of the extension of the Harassment Prevention Orders.

39.     In an attempt to address the severe emotional distress she had been suffering as a result of the Incident and the District's handling of the Incident, on November 21, 2013, Jane began meeting with an Emerson Hospital therapist at her parents' sole expense.  Lincoln-Sudbury had not provided Jane any counseling or therapy services.  In fact, Jane never heard from or spoke to Leichtman after her initial report of the Incident.

40.     At around the same time, Jane's parents requested that the District convene a meeting to discuss Jane because they did not believe her sitting in the main room of East House all day instead of attending class, was good for her mental health or educational development.

41.     On November 20, 2013, Patterson informed Jane's parents that Lincoln-Sudbury was finally allowed by the police to conduct an investigation related to Jane's allegations of sexual abuse by the Perpetrators- but they were not allowed to talk to the Perpetrators. Lincoln Sudbury represented that it had no authority to punish or otherwise remove the Perpetrators from the school.

**The District Requires a Therapeutic, Alternative School for Jane**

42.     On November 22, 2013, a meeting was convened between Jane's parents, various District and Lincoln-Sudbury administrators, including Ramos and Patterson, and some of Jane's teachers.  Jane's parents expressed concern that Jane was sitting in the main room of East House right in front of the mailboxes, on display for other students, and not being provided any academic work. Jane's parents also expressed concern that she was being penalized academically for her absences. It was in this meeting that Patterson suggested that Jane sit in the conference room henceforth.

43.     The District also responded that it could not provide Jane with appropriate academic, social, and emotional support and that it was unable to completely separate Jane from the Perpetrators at Lincoln-Sudbury.  As a result, the District suggested that Jane attend an alternate school instead of continuing at Lincoln-Sudbury.

44.     On December 2, 2013 Jane visited what she was told was a therapeutic school – EDCO Collaborative School – and began attending EDCO at its North Crossing campus in

Watertown, Massachusetts on December 3 as part of a 45-day Assessment Program. The 45-day Assessment Program ended on or around February 28, 2014.

45.     After transferring to EDCO, Jane learned that EDCO, not Lincoln-Sudbury, might appear on her transcript for the first semester of the 2013-2014 academic year.[3] This was troubling to Jane because her mother had been assured by school administrators that EDCO would not appear on her transcript. Jane felt that having a therapeutic school listed on her transcript would punish her academically for the Incident, because she believed that most colleges do not view such schools as favorably as a high-quality public school like Lincoln-Sudbury.

46.     EDCO was located more than an hour from Jane's home, and she was often forced to take a taxi either to or from the program.

47.     On January 28, 2014, a psychological assessment was conducted of Jane at EDCO as part of the 45-day assessment. The assessment noted that when Jane first entered EDCO's 45-Day Assessment Program, she "was significantly compromised by distractibility, difficulty concentrating, intrusive thoughts and memories, fatigue from impaired sleep, and persistent efforts to try [to] avoid memories of her assault ...Her attention appeared to improve by early January, though she still regularly required clinical support at times of stress and was typically only able to stay focused for a maximum of 20 to 30 minutes."  The report noted that "Jane'[s] symptoms appeared consistent with Post- Traumatic Stress Disorder (PTSD) . . . ."  The report also found that Jane was depressed – issues which Jane never battled with prior to the Incident.

48.     In January of 2014, Jane decided that she should visit Lincoln-Sudbury in an effort to transition back to the high school after her 45-day assessment had concluded. Jane

---

[3] EDCO refers to a collaborative of therapeutic schools servicing Massachusetts. While Jane attended an EDCO program at North Crossing, the name EDCO and not North Crossing would appear on any transcript issued by an EDCO school.

visited Lincoln-Sudbury two times as part of this transition process, once on January 31, 2014 and again on February 5, 2014 in hopes of transitioning back. Despite her desire to return to Lincoln-Sudbury, Jane encountered the Perpetrators, still subject to the Harassment Prevention Order, and was therefore unable to feel safe within the school. During those visits, school administrators did nothing to support Jane, not even greeting her or escorting her to classes.

49.     Instead, Lincoln-Sudbury assigned a random staff member to sit in each of Jane's classes to monitor her reaction to being in the school, but not to provide assistance.  On information and belief, no District or Lincoln-Sudbury administrator informed the staff members of Jane's mental and emotional state.  While Jane and her parents had been assured that her teachers would not call attention to her by calling on her in class, she was called on in her CPR class.  When the staff member monitoring that class did nothing to intervene and diffuse the situation, Jane had to leave class due to her anxiety and embarrassment.

50.     In addition, during the January 31, 2014 visit, the Perpetrators' friends harassed Jane in the cafeteria, laughing and pointing at her. The friends also gave her mocking looks in the hallways.  Jane reported this conduct to Patterson.

51.     At the end of the 45 day assessment period at EDCO, Lynn Carlson (("Carlson") outplacement coordinator at Lincoln-Sudbury) informed Jane's mother that Jane would need to stay in an outplacement facility since they could not provide a safe environment for her in house at Lincoln-Sudbury.  In addition, because there was only one spot left in the EDCO program for the Spring semester, if Jane wanted to stay there, Carlson informed Mrs. Roe via phone that she had to sign off on the placement that day.

52.     On February 10, 2014, therefore, a District IEP meeting was convened for Jane at her parents' request, and was attended by Carlson, Patterson, Ramos, Jane's Special Education

Liaison, and not by Wong. Not a single regular education teacher was present at this meeting.

Massachusetts DOE requirements mandate that at least one regular education teacher must be

present at this meeting. During this meeting, the District again recommended that Jane stay

within the EDCO program until the end of her IEP term, February 9, 2015.

53.     Jane and her parents were opposed to Jane staying in the EDCO program because

they felt it would not provide her with an education equal to that which she had prior to the

Incident. EDCO was over an hour drive from Jane's home, was not academically challenging

for Jane, and did not provide the same level of social interactions with her peers as she had

previously at Lincoln-Sudbury. Jane also felt that having EDCO on her transcript would likely

make it much more difficult for Jane to be accepted to the same level of college that she would

have otherwise.

54.     Nevertheless, the District denied the Roes' request for Jane to attend a different

equivalent public school, or private school, nearby. In addition, due to her placement at EDCO,

Jane had to drop her double enrollment in math, and did not receive a wellness credit. In

addition, Jane was a two season athlete (rugby and field hockey) at Lincoln-Sudbury before the

incident. EDCO did not offer these sports. At the same time, Jane and her parents were informed

that because Jane would remain at EDCO for the rest of the second semester, EDCO, not

Lincoln-Sudbury, would be on her transcript.

55.     Unhappy with this outcome, Jane and her parents began exploring private school

options for Jane. The District did not support the Roes' decision to send Jane to a different

school and by letter dated February 22, 2014, Ramos informed them that it would not fund any

of the "tuition or transportation costs." In addition, when Jane's Special Education Liaison sent

her a recommendation for private schools, she was reprimanded by Ramos. As a result, Jane's

parents felt forced to have Jane continue to attend EDCO.

56.     On information and belief, at no time did the District or Lincoln-Sudbury consider

the expulsion or transfer of the Perpetrators to accommodate Jane.  Instead Jane was informed

that the District and Lincoln-Sudbury could not provide in-house placement options to both meet

her academic needs and protect her from the Perpetrators.

57.     The BEACON program, designed for students who had either formerly been

outplaced due to depression and anxiety or to avoid such outplacement, was announced to

Lincoln-Sudbury staff on June 14, 2014.  Although the BEACON program was implemented in

the Fall of 2014, it was never offered to Jane.  Indeed, when she inquired, Jane's mother was

informed that Jane did not qualify for the BEACON program.

58.     On information and belief, since its implementation in the Fall of 2014, the

BEACON program, designed to reduce outplacement costs, has serviced numerous students in

similar circumstances to those experienced by Jane.

59.     On March 18, 2014, Leslie LeBlanc ("LeBlanc"), an EDCO teacher, emailed

Jane's parents to describe recent observations of Jane, stating that in gym class Jane had been

"non-compliant with very basic rules and had an overall disrespectful attitude toward her

teachers…" LeBlanc commented that this was a "drastic change."

60.     A little over a week later, on March 27, 2014, Jane was admitted to Anna Jacques

Hospital after reporting to her therapist that she felt suicidal. Jane remained at the hospital until

April 4, 2014.  This was triggered in part by negative experiences at EDCO.

61.     In the months following her admission to the hospital, Jane continued to suffer

from depression at EDCO, in part because she wasn't challenged academically and she felt

excluded from "normal" activities and course work other students her age were able to participate in.

62.     Left with no other option to ensure her safety, education and well-being, Jane's parents decided that it was necessary to send Jane to a private school and Jane was enrolled at Lawrence Academy in the fall of 2014 at her family's sole expense.

63.     Jane remained a student at Lawrence Academy, at her family's sole expense, until she graduated in May of 2017.

### Lincoln-Sudbury's Failure to Comply with Title IX and Department of Education Regulations

64.     The Office of Civil Rights ("OCR"), a subsidiary of the U.S. Department of Education ("DOE") is responsible for the implementation, interpretation and enforcement of 20 U.S.C. § 1681 ("Title IX").

65.     Under Title IX and 34 C.F.R. 106.8, schools must "adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

66.     Additionally, on April 4, 2011, the OCR published a document entitled "Dear Colleague Letter" ("DCL") which elaborates upon required dispute resolution procedures and requires, *inter alia*, that schools conduct 1) an adequate investigation of complaints which allows for the presence of all parties, witnesses and other evidence; and 2) provide notice to the parties of the outcome of any investigation.

67.     The DCL was designated a "significant guidance document" under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices, and was intended to inform recipients like the District how to comply with their legal obligations.[4]

68.     In addition to investigating any complaint of sexual harassment, a school must take interim measures to protect the Complainant during the course of an investigation. Specifically, the DCL requires that schools should seek to minimize disruption to the Complainant and "should not, as a matter of course, remove complainants from classes or housing while allowing alleged Perpetrators to remain."

69.     At no time did the District conduct an adequate investigation, allow Jane the opportunity to present witnesses and/or evidence or provide any parties with findings relative to such investigation.

70.     Further, as early as November 12, 2013, the District, Wong, Patterson and Lincoln-Sudbury were aware that Jane had sought and obtained harassment prevention orders against the Perpetrators.  Notwithstanding, the school failed to take any action, interim or otherwise, to protect her and, in fact, acted far outside of OCR recommended practice.

71.     To the extent Lincoln-Sudbury performed any investigation, it failed to provide Jane with a Notice of Outcome as required by Title IX and the Dear Colleague letter.

72.     The only communication received by Jane was an October 1, 2015 letter from Ramos and Peter Elenblass, informing her that the District's investigation of her allegations was inconclusive.

73.     This purported Notice of Outcome, received almost TWO YEARS after Jane reported the Incident is wholly inadequate.  Shockingly, it relied on the fact that the District had recommended that Jane attend EDCO, and that the Perpetrators were attending other schools

---

[4] While the DCL has since been revoked, it was in effect at all times relevant to this litigation.

"due to unrelated factors," as somehow solving the problem of Jane having contact with the Perpetrators at school.  That Ramos and the District did not acknowledge that Jane had been forced to attend private school at her family's sole expense one year prior to the letter not only demonstrates a complete disregard for the true facts of the situation, but also suggests that the "investigation" referred to was less than robust.

74.     Perhaps not surprisingly, TWO YEARS LATER on August 24, 2017, after both of the Perpetrators had graduated from Lincoln-Sudbury, Jane's mother received another letter from Ramos and Peter Elenbaas claiming that the October 2015 letter had incorrectly reported the school's findings.

75.     In that August 2017 letter, Lincoln-Sudbury for the first time admitted and acknowledged that its investigation had found "that there was sufficient evidence that an interaction of an egregious nature did occur on the evening of November 1st, and that the boys' conduct substantially violated one of the core values of L-S."

76.     The letter goes on to acknowledge that the District recommended an out of district placement for Jane, but does not mention any action taken against the Perpetrators.  On information and belief, no disciplinary action was taken against the Perpetrators.

77.     On further information and belief, Lincoln-Sudbury deliberately failed to accurately report the results of its investigation prior to August of 2017 because the Perpetrators remained students at the school and Defendants did not want to contend with adverse publicity or parental complaints about the presence of known perpetrators of "physical assault and inappropriate sexual behavior" within the school.

78.     In addition to these dramatic failures of investigation and action, the District denied Jane the benefits of an academic program equivalent to that offered at Lincoln-Sudbury.

The EDCO program that the District insisted Jane attend provided a reduced academic challenge as well as denying Jane access to Spanish, math, sports and wellness instruction that was available at Lincoln-Sudbury.  This denial is particularly egregious considering the fact that the Lincoln-Sudbury BEACON program would have, and should have, been available to Jane in September of 2014.

**COUNT I**

**DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF 20 U.S.C. § 1681
(TITLE IX)
(LINCOLN-SUDBURY SCHOOL DISTRICT)**

79.     Plaintiff incorporates by reference the foregoing Paragraphs, as though fully set forth herein.

80.     The acts and failures to act perpetrated against Jane amounted to unlawful discrimination on the basis of gender.

81.     The discrimination was sufficiently severe and pervasive to create an abusive educational environment for Jane.

82.     One or more administrators of Lincoln-Sudbury and the District, with authority to take corrective action on Jane's behalf, had actual notice of said discrimination and failed to adequately respond, in violation of Title IX.

83.     The administrators' failures amounted to deliberate indifference toward the unlawful sexual conduct that had been perpetrated upon Jane, and with respect to the ongoing contact with the Perpetrators that she was forced to endure.

84.     As a result, Jane was subject to continuing harassment and a loss of educational opportunity.

85.     Additionally, the District failed to enact and/or disseminate and/or implement proper or adequate procedures to discover, prohibit or remedy the kind of discrimination Jane suffered.

86.     This failure included, without limitation, non-existent or inadequate customs, policies or procedures for the recognition, reporting, investigation and correction of unlawful discrimination; which amounts to deliberate indifference toward the unlawful conduct that had occurred, was occurring, or was likely to occur.

87.     As a result, Jane was subjected to continuing harassment and a loss of educational opportunity.

88.     The District acted with deliberate indifference in deviating significantly from the standard of care outlined by the Dear Colleague letter of 2011.

89.     Because of The District's deliberate indifference, Jane suffered loss of educational opportunities and/or benefits, emotional distress and psychological damage, and has and will continue to incur attorneys' fees and costs of litigation.


## COUNT II

### SECTION 1983 VIOLATION  (42 U.S.C. § 1983)
### (ALL DEFENDANTS)


90.     Plaintiff incorporates by reference the foregoing Paragraphs, as though fully set forth herein.

91.     Under the Fourteenth Amendment, Jane had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

92.     At all relevant times, Defendants Wong, Ramos and Patterson were state actors acting under the color of state law.

93.     Defendants each subjected Jane to violations of her right to personal security and bodily integrity and Equal Protection of Laws by: failing to investigate the Perpetrators' misconduct; failing to appropriately discipline the Perpetrators; failing to adequately train and supervise Wong, Patterson and Ramos; and manifesting deliberate indifference to the sexual assault and ongoing harassment of Jane by other students.

94.     The District has and/or had unconstitutional customs or policies of a) failing to investigate evidence of criminal and tortious misconduct against District students in the nature of violations of their right to personal security and bodily integrity and b) failing to adequately train and supervise District employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

95.     On information and belief, the District has followed these unconstitutional customs and policies not only with regard to Jane but also with regard to criminal and tortious misconduct committed against other District students.

96.     The District's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

97.     Defendants Wong, Ramos and Patterson are or were at the time of events complained of within, policymakers for the purpose of implementing the District's unconstitutional policies or customs.

98.     Jane has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and

proximate result of Defendants' deliberate indifference to her rights under the Fourteenth Amendment.

## COUNT III

### *MONELL* LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE RESPONSE TO SEXUAL ASSAULT   (42 U.S.C. § 1983)
### (LINCOLN-SUDBURY SCHOOL DISTRICT)

99.     Plaintiff incorporates by reference the foregoing Paragraphs, as though fully set forth herein.

100.     At all relevant times, Defendants Wong, Patterson, and Ramos, were "state actors" working for Lincoln-Sudbury School District, a federally funded school system.

101.     Defendants Wong, Patterson, and Ramos acted under "color of law" when refusing to respond to Plaintiff's sexual assault on school premises.

102.     Defendants Wong, Patterson, and Ramos failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

103.     Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to equal access to an educational environment free from harassment and discrimination.

104.     Defendants Wong, Patterson, and Ramos should have known that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations and guidance.

105.     Defendants Wong, Patterson, and Ramos each violated Plaintiff's right to equal access by:

a.     Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

b.      Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence was the subject of a criminal investigation;

c.      Failing to take steps to protect the Plaintiff as necessary, including interim steps taken prior to the final outcome of the investigation;

d.      Failing to provide a grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence.  The procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights;

e.      Failing to use a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures; and

f.      Failing to notify both parties of the outcome of the complaint.

99.    Defendant Lincoln-Sudbury School District violated Plaintiff's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

100.    These policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

101.    Defendants' actions and lack of actions were the proximate cause of Jane's emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a result of Defendant District's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

## COUNT IV

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (ALL DEFENDANTS)

102.     Plaintiffs incorporate by reference the foregoing Paragraphs, as though fully set forth herein.

103.     The District had a duty to provide Jane with a safe educational environment.

104.     Wong, Ramos and Patterson, as school administrators, also had a duty to provide Jane with a safe educational environment.

105.     The District, Wong, Ramos and Patterson breached that duty by failing to adequately safeguard Jane from the Perpetrators despite having actual knowledge of Harassment Prevention Orders in place to protect Jane from contact with them.

106.     The District, Wong, Ramos and Patterson further breached that duty by forcing Jane to attend school by in the East House main room and be subjected to embarrassment and distress related to being viewed by a great number of students and the Perpetrators in an area typically reserved for in-school punishments and detentions.

107.     As a result of the District, Wong, Ramos and Patterson's negligence, Jane suffered physical harm manifested by objective symptomatology.  Jane has suffered severe negative physical and emotional effects due to the District's negligent conduct, including but not limited to: anxiety, trouble sleeping, depression, suicidal thoughts and post-traumatic stress disorder.  Consequently, Jane had been hospitalized for suicidal tendencies and has, otherwise, sought professional counselling to address her distress and intense emotional distress she was forced to endure due to the District, Wong, Ramos and Patterson's actions.

108.     Any reasonable person would have suffered emotional distress under the circumstances Jane was forced to endure due to Defendants' negligent conduct.

## COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (PATTERSON, RAMOS AND WONG)

109.    Plaintiff incorporates by reference the foregoing Paragraphs as though fully set forth herein.

110.    Patterson, Ramos and Wong knew or should have known that by forcing Jane to attend school in the East House main room, she would be subjected to embarrassment and distress related to being viewed by a great number of students and the Perpetrators in an area typically reserved for in-school punishments and detentions.

111.    Patterson, Ramos and Wong knew or should have known that their failure take any action to remove the Perpetrators from the Lincoln-Sudbury environment and/or investigating Jane's claims would subject her to severe emotional distress.

112.    As a result, Jane suffered physical harm manifested by objective symptomatology. Jane has suffered severe negative physical and emotional effects due to Lincoln-Sudbury's negligent conduct, including but not limited to: anxiety, trouble sleeping, depression, suicidal thoughts and post-traumatic stress disorder.  Consequently, Jane has been hospitalized for suicidal tendencies and has sought professional counselling to address her distress and intense emotional distress she was forced to endure due to Wong, Ramos and Patterson's actions.

113.    Patterson, Ramos and Wong's actions were extreme and outrageous such that any reasonable person in Jane's position would have suffered emotional distress under the circumstances Jane was forced to endure due to Wong, Ramos and Patterson's negligent conduct.

WHEREFORE, Plaintiff requests that this Court:

a.     Enter judgment for Plaintiff on all counts of her Complaint;

b.     Award Plaintiff all direct, consequential and incidental compensatory damages suffered as a result of Defendants' actions;

c.     Award Plaintiff reasonable attorneys' fees, costs and disbursements associated with this action; and

d.     Grant whatever other relief the Court deems appropriate.


## JURY DEMAND

Plaintiff hereby claims and demands a trial by jury on all claims so triable.


Dated:  April 24, 2018               Respectfully submitted,

**JANE ROE,**

By her attorneys,


/s/ Kristen Schuler Scammon_____
Kristen Schuler Scammon (BBO #634586)
Michael S. Day (BBO #656247)
Ryan A. Rucki (BBO #680227)
TORRES, SCAMMON, HINCKS & DAY, LLP
35 India St.
Boston, MA  02110
T: (617) 307-4406
E: kscammon@tshdlegal.com
   mday@tshdlegal.com
   rrucki@tshdlegal.com