# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE ROE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) 18-10792-FDS |
| | ) |
| LINCOLN-SUDBURY REGIONAL | ) |
| SCHOOL DISTRICT, BELLA WONG, | ) |
| AIDA RAMOS, and | ) |
| LESLIE PATTERSON, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER ON JOHN DOE'S MOTION TO INTERVENE

**SAYLOR, J.**

This is an action against a school district arising out of its response to a reported case of sexual assault. Plaintiff Jane Doe filed suit against the Lincoln-Sudbury Regional School district and several officials alleging that they engaged in discriminatory practices and inflicted emotional distress though an inappropriate response to her report of a sexual assault. The underlying assault claim arose out of an interaction between the plaintiff and two other students during a high school football game.

John Doe, one of the alleged perpetrators of the sexual assault, has filed a motion to intervene pursuant to Fed. R. Civ. P. 24. He contends that he satisfies the requirements to intervene as a matter of right pursuant to Rule 24(a) or, in the alternative, should be permitted to intervene pursuant to Rule 24(b).

For the reasons set forth below, the motion to intervene will be denied.

## I. Background

The facts below are set forth as alleged in the complaint.

### A. The Parties

Jane Roe (a pseudonym) is a resident of Massachusetts. At the time of the alleged incident she was a 15-year-old sophomore at Lincoln-Sudbury High School.

Lincoln-Sudbury Regional School District is the governing body of the Lincoln-Sudbury High School. Bella Wong is the superintendent of the school district and the Principal of the high school. Aida Ramos is the Director of Student Services at the high school. Leslie Patterson was the "Housemaster" of the East House at the high school, the house to which Roe was assigned.

### B. The Alleged Incident

The claims arise out of an alleged incident of sexual assault that occurred on November 1, 2013. Roe alleges that while she was attending a football game at the high school, she was lured to an adjacent field by two fellow students. The two students, both males, are alleged to have forced her to perform oral sex and to have penetrated her with their fingers. John Doe is one of the alleged perpetrators of this assault.

According to the complaint, for several days after the incident, Roe struggled to focus at school and was deeply traumatized. She exchanged numerous text messages with both assailants, who apologetically acknowledged the sexual contact and begged her not to report it.

On November 7, 2013, Roe reported the assault to Sue Leichtman, a clinical counselor at the high school. Leichtman notified defendant Patterson and Roe's mother of the report. Roe's mother immediately took her to receive medical care, which included the completion of a medical rape kit and the taking of photographs of her bruises by the Sudbury Police.

On November 12, 2013, the Middlesex County Juvenile Court issued a Harassment Prevention Order as requested by Roe's parents. A copy of the order was provided to Lincoln-Sudbury.

### C. The School's Response

On November 12, 2013, Roe returned to school for the first time after reporting the assault. According to the complaint, because both alleged perpetrators continued to attend classes, Roe was instructed by Patterson to sit in the main room of the East House, a public room used both as a student communications hub and as the location for students serving in-school suspensions and after-school detentions. She alleges that she spent her school days alone in that room from November 12 through November 22, during which time one of the assailants frequently passed her to pick up his mail. She further alleges that no counselors of any kind spoke with her during this time.

On November 14, 2013, Roe's parents spoke with Wong to raise concerns about the school's response to the situation. According to the complaint, Wong said that her authority was limited and that the school was not able to be provide the parents with any information about the investigation. Roe alleges that from November 14 through November 22, she made sporadic efforts to attend classes but was unable to do so regularly for fear of seeing the perpetrators.

On November 20, 2013, the Roes requested that the Harassment Prevention Orders be extended. That request was granted by the court and Lincoln-Sudbury was notified. According to the complaint, that same day, Patterson notified the Roes that the police were allowing Lincoln-Sudbury to investigate, but that they could not remove the alleged perpetrators from the school.

The next day, Roe began meeting with a therapist from Emerson Hospital to address her

emotional health issues.

On November 22, 2013, a meeting was held between Roe's parents and several school officials. According to the complaint, the school suggested that because it was unable to respond adequately to her academic, emotional, and social needs—including keeping her separate from the alleged perpetrators—she should attend a therapeutic school.

On December 2, 2013, Roe began attending EDCO Collaborative School for a 45-day assessment program. That transfer involved commuting more than an hour each way to school. During her time at EDCO, she was assessed by a therapist, who noted potential mental or emotional health issues.

In early 2014 Roe made two attempts to return to Lincoln-Sudbury. According to the complaint, on those occasions she was not provided any support by staff, encountered one of the perpetrators of the assault, and was harassed by other students. As a result, she had to spend the spring semester at EDCO, a school that she alleges was worse for her academic and athletic prospects as well as more than an hour from her home. Lincoln-Sudbury officials rejected her proposal to attend private school paid for by the town.

On March 27, 2014, Roe was admitted to Anna Jacques Hospital after reporting to her therapist that she felt suicidal. She remained in the hospital until April 4, 2014.

According to the complaint, Roe's parents felt that EDCO was providing their daughter with an inferior experience and risking her emotional health. Starting in the fall 2014 and continuing until her graduation in 2017, she attended Lawrence Academy, a private school, at her family's expense.

### D. The Claims

The complaint asserts claims of discrimination on the basis of gender (20 U.S.C. § 1681)

4

(Count 1); violation of civil rights (42 U.S.C. § 1983) (Count 2); failure to train and supervise sexual assault response (42 U.S.C. § 1983) (Count 3); negligent infliction of emotional distress (Count 4); and intentional infliction of emotional distress (Count 5).

## II.     Analysis

John Doe, one of the accused perpetrators of the above incident, has moved to intervene in this case, asserting that he needs to do so in order to protect his rights under Title IX and his reputational interests. He is not attempting to intervene for a narrow and limited purpose (for example, to protect the privacy of his educational records); instead, he apparently seeks to intervene as a full-fledged litigant to assert claims on his own behalf.

Intervention is governed by Fed. R. Civ. P. 24. The first type of intervention, intervention as of right, applies when an intervenor timely "claims an interest relating to the . . . subject of the action, and is so situated that disposing of the action may . . . impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *see also Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011). "The inherent imprecision of Rule 24(a)(2)'s individual elements dictates that they be read not discretely, but together, and always in keeping with a commonsense view of the overall litigation." *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998).

John Doe does not have the right to intervene under Rule 24(a). A central requirement to intervention as of right is a claim of an interest relating to the subject of the action that will be impaired absent the intervention. *See* Fed. R. Civ. P. 24(a). Doe cites his own rights under Title IX as being implicated by Roe's complaint. However, regardless of the outcome of Roe's claim, Doe remains free to file a separate action regarding his own rights under the statute. Furthermore, as a non-party to this action, Doe runs no risk of facing prejudicial use of issue or

claim preclusion by a future litigant. *See generally* Charles Alan Wright & Arthur R. Miller., FEDERAL PRACTICE AND PROCEDURE § 4401-4465 (3d ed. 2019) (discussing res judicata rules and mutuality requirements).[1]

The second type of intervention under Rule 24 is permissive intervention. A court may allow anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In exercising that discretion, "the district court can consider almost any factor rationally relevant [and] enjoys very broad discretion in granting or denying the motion." *Daggett v. Comm. on Governmental Ethics & Election Practices*, 172 F.3d 104, 112-13 (1st Cir. 1999).

Permissive intervention under Rule 24(b) is inappropriate here. First, Doe has not made a formal complaint nor even identified the contours of such a claim; at most, he has suggested the existence of a possible Title IX claim, without committing that he would assert such a claim. It is not clear, therefore, what "claim or defense" he may have that shares a common question with this case. Second, his interest in any such claim would be entirely protected by filing a separate lawsuit. Intervention would also almost certainly cause delays in this case, discovery has already been completed and the parties are preparing for mediation and/or dispositive motion practice. Indeed, there are serious questions about the timeliness of the motion to intervene in light of Doe's long-standing notice of this action. In any event, intervention is neither necessary nor appropriate, and will be denied.

---

[1] Doe also refers to protection of his reputation. The substance of Roe's claims is the school's response to her allegation of assault. The perpetration of the assault is certainly a factual issue underlying the claims in this case, but the focus of the legal claims is on the school's response, not the assault itself. *See Davis Next Friend LaShona v. Monroe County Bd. of Edu.*, 526 U.S. 629, 643 (1999).

## III. <u>Conclusion</u>

For the foregoing reasons, the motion to intervene of John Doe is DENIED.

**So Ordered.**

Dated: October 31, 2019

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge